# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MIROWSKI FAMILY VENTURES, LLC,      :
      :
     Plaintiff,       :
      :      **Case No. 373798-V**
      v.       :
      :
BOSTON SCIENTIFIC CORP., *et al.*,     :
      :
     Defendants.       :

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.

## MEMORANDUM AND ORDER

This long-simmering patent royalty dispute was on the eve of trial in the United States

District Court for the Southern District of Indiana when the Supreme Court decided *Gunn v.*

*Minton*, 133 S. Ct. 1059 (2013). That decision cast doubt on whether the federal court had

subject matter jurisdiction over the declaratory action filed by Boston Scientific Corporation

("Boston Scientific") on May 31, 2011, against Mirowski Family Ventures, LLC ("Mirowski").

That action sought a ruling that a patent had not been infringed, that no additional patent

royalties were owed to Mirowski, and that Boston Scientific did not breach any fiduciary duties

by settling patent litigation in Delaware and Indiana against St. Jude Medical, Inc. ("St. Jude").

After briefing, the federal court dismissed the Indiana case on July 29, 2013, for lack of subject

matter jurisdiction. *Mirowski Family Ventures, LLC v. Boston Scientific Corp.*, No. 1:11-cv-736-

WTL-DKL, 2013 WL 3895246, at *1 (S.D. Ind. July 29, 2013). No appeal was taken from that

order.

Understandably concerned that a case that the parties had spent years preparing for trial

was about to be dismissed on jurisdictional grounds, Mirowski filed a complaint in this court on

February 22, 2013. The case was assigned to the Business & Technology Program, Md. R. 16-

205, on April 2, 2013, and a scheduling order was issued that same day. This court held a scheduling hearing on June 27, 2013, and set a firm date for a two-week jury trial to begin on January 27, 2014. On August 19, 2013, Boston Scientific filed an answer and a counterclaim. The next day, August 20, 2013, Boston Scientific filed the motion that is the subject of this decision. The motion asks that Boston Scientific be allowed to associate and consult with the law firm of Finnegan Henderson Farabow Garrett & Dunner, LLP ("Finnegan"). Finnegan had been lead counsel for Boston Scientific in the recently dismissed Indiana case. Mirowski objected, and this court held a hearing on August 29, 2013. For the reasons set forth below, the defendants' motion is denied.

## Background

The ins and outs of this case, and the multiple prior litigations brought or defended by the parties, are exceedingly complex. For present purposes an abridged factual summary will suffice. Years ago, Dr. Mieczyslaw Mirowski invented the implantable cardioverter defibrillator ("IDC"), and obtained several patents for this invention, as well as patents directed to cardiac resynchronization therapy ("CRT"). His co-inventor was Dr. Morton Mower. There are two patents germane to the present dispute. The first is U.S. Patent No. 4,407,288 ("the #288 patent"), which was issued on October 4, 1984. The second is U.S. Patent No. 4,92868888, which was later reissued on May 20, 2003 as RE38,119 ("the #119 patent"). Pursuant to an assignment, Dr. Mower retains a 27% interest in Dr. Mirowski's patent portfolio via the plaintiff in this case.

The named plaintiff in this case is a Maryland limited liability company whose principal purpose, relevant to this case, is as the owner of rights to both the #288 patent and the #119



**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.

patent, as well as right under a 1973 patent license and as a party to a 2004 patent license with Guidant Corporation, the predecessor to Boston Scientific.[1]

The 1973 license provided Mirowski certain rights if a patent infringement suit was filed. It required Mirowski's "mutual agreement" not only to "bring" but also as to how to "conduct suit or actions against" any infringer, and granted Mirowski the "right to participate" in any action against an infringer. A new license was signed in 2004 with substantially the same provisions.

The short version of this case hinges on what Mirowski alleges was a secret settlement between Boston Scientific and St. Jude on July 29, 2006, to settle, among other things, litigation in Delaware regarding the #119 patent and litigation in Indiana regarding the #288 patent. According to Mirowski, Boston Scientific secretly agreed with St. Jude to resolve three of its own cases in which St. Jude was the plaintiff (Minnesota, Texas, and California), in exchange for relinquishing some $700 million worth of claims claims against St. Jude in the Delaware and Indiana cases in which Mirowski had a material financial interest, without Mirowski's knowledge or consent. Mirowski also alleges that, as part of the secret deal, St. Jude gave up some $700 million worth of claims it had against Boston Scientific alone. Not surprisingly, Boston Scientific denies that it did anything improper in settling with St. Jude.

The 2011 Indiana declaratory action on behalf of Boston Scientific was filed by Finnegan, the law firm that also prosecuted the #119 patent and the reissue of the #288 patent. This was done in the name of Mirowski, the patent owner, under a power of attorney, but at the behest of Guidant Corporation, the then licensee, which is now a wholly owned subsidiary of Boston Scientific.

---

[1] The corporate relationships among the defendants are more complex than described above, but is not relevant to the issue before the court.

3

ENTERED

SEP 0 4 2013

Clerk of the Circuit Court

Mirowski moved to disqualify Finnegan in the Indiana action on two grounds. First, that Finnegan was its counsel in connection with prosecution of the #288 and #119 patents, had obtained confidential information from Mirowski about these patents, and was therefore precluded under Indiana Rule 1.9(a) from suing a former client about matters in which it had represented it. Second, that Finnegan was precluded as a matter of law from challenging patents that it had successfully prosecuted with the United States Patent and Trademark Office ("PTO").

The district court initially denied Mirowski's motion, concluding that Mirowski had not adduced sufficient evidence of an attorney-client relationship under Indiana law. The second basis for denying the motion was that Finnegan had represented to the district court that it would not, on behalf of Boston Scientific, challenge the validity of either the #119 patent or the #288 patent, both of which were in issue in that case.

Matters began to shift when Mirowski moved in limine to preclude Boston Scientific from arguing that #119 was not infringed by St. Jude in the Delaware litigation (the opposite of the position that Finnegan argued on behalf of Mirowksi in that case). At that point, Mirowski was concerned about Finnegan cross-examining Dr. Mower, the co-inventor of the #119 patent who also retained a 27% interest in the Mirowski patent portfolio. It had come to came to light that Finnegan had represented Dr. Mower in a different Delaware lawsuit over the #119 patent, *Medtronic, Inc. v. Guidant Corp.*, 378 F. Supp. 2d 503 (D. Del. 2005), *aff'd*, 465 F.3d 1360 (Fed. Cir. 2006). Finnegan had prepared Dr. Mower for and represented him at his deposition and then prepared a privilege log in which Finnegan claimed that it had an attorney-client privileged relationship with Dr. Mower. Judge Lawrence wrote:

> There are a number of issues raised in this motion that concern the Court. Of greatest concern to the Court is the fact that this issue may mean much more than simple preclusion of certain arguments or cross-examination of Dr. Mower. Rather, the arguments raised here suggest that it may be improper for Finnegan to continue as

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md

counsel in this case *at all*. If there were an attorney-client relationship between Dr. Mower and Finnegan, Finnegan's continued representation of Boston Scientific may run afoul of Indiana Rule 1.9(a) and 1.9(c). That is, simply handing cross-examination off to co-counsel (whether of the same firm or not) may not cure the conflict, because Dr. Mower's prior firm may now take a position materially adverse to him. Furthermore, it may be that confidential information has already been shared with co-counsel in preparation for trial. Lastly, even if there is no conflict under the rules, the Court believes that an appearance of impropriety may nevertheless arise.

Entry Regarding Dr. Mower at 5, *Mirowski Family Ventures, LLC v. Boston Scientific Corp.*, No. 1:11-cv-736-WTL-DKL, 2013 WL 3895246, at *1 (S.D. Ind. July 29, 2013) (No. 364) (emphasis in original).

Judge Lawrence was never called upon to make a final ruling on this question because, in order to preserve the upcoming trial date, Dr. Mower signed a limited waiver, contingent on Finnegan not arguing non-infringement or invalidity of the #119 patent. This waiver was limited expressly to the then pending Indiana federal case.

In the motion at issue before this court, Boston Scientific contends that barring Finnegan is not warranted because it requests that Finnegan be permitted to consult with Arnold & Porter, trial counsel in this case, only "on issues unrelated to patent invalidity and the cross-examination of Dr. Mower." Given the complexity of this case, Boston Scientific argues that it "should not be deprived of its long-time counsel and its work [product] on the central issues in this case, particularly given the duration and complexity of the Indiana litigation." In the alternative, Boston Scientific asked for a continuance of the January 2014 trial date to allow "Arnold & Porter sufficient time to familiarize itself with record and the many complex issues of fact and law."

Mirowski asks this court to answer the question regarding Finnegan's representation of Dr. Mower in *Medtronic, Inc. v. Guidant Corp.*, 378 F. Supp. 2d 503, that Judge Lawrence did not have to reach by virtue of the limited waiver obtained from Dr. Mower in order to avoid

**ENTERED**

SEP 0 4 2013

·Clerk of the Circuit Court
Montgomery County, Md.

5

losing the trial date. Mirowski also asks this Court to revisit the district court's denial of its earlier disqualification motion and, as a consequence, bar any participation by Finnegan in this case. Mirowski also opposes any postponement of the trial.

Discussion

I.

Every law student is taught: "A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." *T.C. Theatre Corp v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) (footnote omitted), *aff'd*, 216 F.2d 920 (2d Cir. 1954). Nevertheless, this issue frequently arises.

Applying Indiana law, the district court held that Mirowski had not been Finnegan's client, despite Finnegan's prosecution of the #288 patent and the reissue of the #119 patent. *Boston Scientific Corp. v. Mirowski Family Ventures, LLC*, No. 1:11-cv-736-WTL-DKL, 2012 WL 1982114, at *1 (S.D. Ind. June 1, 2012). In the district court's view, the evidence of an attorney client relationship between Mirowski and Finnegan was at best a "technical relationship," arising out of a power of attorney Mirowski had signed authorizing Finnegan to act on its behalf as "the patent owner" before the PTO. *Id.* at *5. The district court found to be important that Finnegan was paid by Guidant, the licensee, took directions from Guidant, and directed its communications to Guidant. *Id.* at *3. The district also considered to be important

**ENTERED**

SEP 0 4 2013

6

Clerk of the Circuit Court
Montgomery County, Md.

the fact that "there is no evidence whatsoever of Finnegan's intent to form an attorney-client relationship with Anna Mirowski or MFV." *Id.* at *6.

Very respectfully, this court disagrees and concludes under Maryland law and on the record before this court, that Finnegan previously represented both Mirowski and Dr. Mower[2] in substantial connection with the very patents which are at the heart of this case, #288 and #119, and are being attacked by Boston Scientific. The prior attorney client representation of both Mirowski and Dr. Mower was substantially related to this case, not waived and, as a consequence, Finnegan cannot participate in this case at all.

II.

In *Gatewood v. State*, 388 Md. 526 (2005), the Court of Appeals had occasion to discuss subsequent, adverse representation by a lawyer and Rule 1.9 of the Maryland Rules of Professional Conduct, albeit in the context of a motion to disqualify a prosecutor who had previously represented the defendant while in the employ of the Public Defender's office. Speaking through Judge Harrell, the Court of Appeals observed:

> Until 1987, attorney-client conflicts were addressed primarily as questions of attorney ethics under the Maryland Code of Professional Responsibility. In 1986, this Court approved the Maryland Rules of Professional Conduct (MRPC), replacing the former Code of Professional Responsibility effective 1 January MRPC 1.9 had no direct predecessor within the former Disciplinary Rules of the Code of Professional Responsibility. Instead, MRPC 1.9 newly addressed the situation of a potential conflict between an attorney's representation of a current client with a former client's interests.

*Id.* at 543.

Pertinent to the inquiry in this case, Judge Harrell continued:

> The language of MRPC 1.9 commands an evaluation by the trial judge whether the current [litigation] is substantially related to the former representation. "Substantially related" cannot mean merely the same facts, case, or [parties] because that would encompass a scenario where the [party's] attorney would be handling the same case.

---

[2] According to the Federal Circuit, Dr. Mower also is a co-inventor of #288. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1374 (Fed. Cir. 2004).

ENTERED

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md

Rather, "substantially related" embraces considerations of circumstances where the same issue is litigated, albeit for a different client, if there is a substantial risk that confidential communications between the attorney and his or her former client may be disclosed or utilized in a material manner prejudicial to the former client.

*Id.* at 544.

The Court of Appeals next had occasion to consider Rule 1.9 in *Attorney Grievance Commission of Maryland v. Siskind*, 401 Md. 41 (2007). Building on *Gatewood,* the Court of Appeals held that once an attorney-client relationship is established, the attorney "is assumed to possess confidential information" stemming from the prior relationship. *Id.* at 57. For this principle, the Court of Appeals cited with approval the decision by Judge Williams in *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 306 (D. Md. 1995). *Siskind*, 401 Md. at 57; *see also Analytica Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983) (stating that "substantially related" means "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client, or whether-if the lawyer is a firm rather than an individual practitioner-different people in the firm handled the two matters and scrupulously avoided discussing them"); *Rosenfeld Constr. Co. v. Superior Court*, 235 Cal. App. 3d 566, 574 (Cal. Ct. App. 1991) (same).

*Buckley* was a patent case. Dr. Buckley had been granted a patent on a fairing, a type of device mounted to the roof of tractor-trailers to reduce drag. *Buckley*, 908 F. Supp. at 301. Thereafter, he granted Rudkin-Wiley an exclusive license to make, sell and use the fairings covered under his patent. *Id.* Other companies began copying the fairing and, as a result, Rudkin-Wiley sued these companies for patent infringement. *Id.* Dr. Buckley and Rudkin-Wiley then entered into a "Litigation Agreement" under which Dr. Dudkin, as co-owner of the

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.

8

patent, agreed to join the suit as a co-plaintiff. *Id.* A lawyer named Mark Stone worked on the case for Airshield and had consulted files related to Dr. Buckley's patent. *Id.* at 302.

After that case was concluded, Stone continued to represent Airshield. *Id.* A dispute arose between Dr. Buckley and Airshield about a second license agreement for the same patent. *Id.* at 303. Dr. Buckley sued Airshield alleging patent infringement. *Id.* Stone appeared in the lawsuit as counsel for Airshield, and Dr. Buckley moved for his disqualification. *Id.* The district court granted the motion, finding Stone had placed himself on both sides of a patent infringement issue, first for and then against Dr. Buckley. *Id.* As a consequence, the district court held Stone violated Rule 1.9(a) of the Maryland Rules of Professional Conduct and was disqualified. *Id.* at 304-07.

### III.

The court's first step in considering a disqualification motion (which this in fact is, although differently postured) is to address the timeliness of the motion. *See, e.g., Gross v. SES Americom, Inc.,* 307 F. Supp. 2d 719, 723-24 (D. Md. 2004); *In re Modanlo,* 342 B.R. 230, 236-37 (D. Md. 2006). The reason for this preliminary inquiry is because disqualification of a lawyer is a drastic action and the court must determine whether the issue has been waived or the motion was brought largely for tactical reasons. However, "the mere length of delay is not dispositive and the Court should not deny a motion to disqualify based on delay alone." *Buckley v. Airshield Corp.,* 908 F. Supp. at 307.

This court finds that Mirowski's opposition to the request by Boston Scientific that Finnegan participate in this case and assist Arnold & Porter was timely. The objection was raised by Mirowski as soon as Boston Scientific sought to use Finnegan in this case in any manner. Arnold & Porter, correctly, had a solid "Chinese wall" erected between it and Finnegan

**ENTERED**

SEP 0 4 2013

9

of its defense, Boston Scientific will attempt to show that the value of #119 was such that it was reasonable for them to have settled with St. Jude on that basis on which they did. In other words, if Finnegan is allowed to participate at all, the very lawyers who defended the patents now seek (albeit through Arnold & Porter) to undermine them. This goes to the heart of the value of the Indiana and Delaware cases that Boston Scientific settled with St. Jude, cases in which Boston Scientific allegedly compromised Mirowski's economic interests in favor of its own. Boston Scientific has not proposed, and the court has been unable to divine, any practical way to shield or disentangle Finnegan's work from the current litigation

The court also finds that there is no actual prejudice to Boston Scientific by the preclusion of Finnegan from participating in this case. At the hearing, Mirowski made it clear that it did not object to access by Arnold & Porter to: (1) the in-house lawyers at Boston Scientific who negotiated or approved the St. Jude settlement; (2) all depositions taken in the Indiana case; and (3) all documents produced in discovery in the Indiana case. The only actual prejudice to Boston Scientific is the additional cost to get its new lawyers up to speed.[7]

Finally, the court finds this to be a case in which counsel that has prosecuted and defended a patent for Dr. Mower (Finnegan) is seeking to attack it. For example, in Boston Scientific's "Sixth Defense" in its Answer, it says: "As asserted, the claims of the Mirowski patents are invalid under the patent laws of the United States . . . ." Although Boston Scientific attempts to restrict this attack to claim 4, it is apparent to this court that it will defend its settlement with St. Jude by making a host of challenges to the validity, scope, construction and

---

[7] It was brought to the court's attention on September 2, 2013 that on August 30, 2013, Boston Scientific named as an expert witness in this case J. Michael Jakes, Esq. Mr. Jakes was, among other matters pertaining to the disqualification motion, lead counsel for Boston Scientific in the Indiana case before Judge Lawrence. Although no motion to preclude Mr. Jakes from testifying is currently before the court, his naming as an expert witness by Boston Scientific appears to raise a plethora of ethical questions under Rule 1.6(a), Rule 1.7(a), Rule 1.9(a), Rule 3.7, and Md. Rule 16-812.

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court

14

since it was retained by Boston Scientific for this case, which evidences that Boston Scientific

knew that Mirowski would not willingly agree to any participation in the Maryland case by

Finnegan. Further, Mirowski's counsel was told by a Finnegan lawyer on June 7, 2013, that

Finnegan would not be representing Boston Scientific in this case, and that Arnold & Porter had

been selected to do so. Nothing was mentioned during this telephone call about any

consideration being given to Finnegan "assisting" Arnold & Porter. When Arnold & Porter first

broached the subject with Williams & Connolly, counsel for Mirowski, on July 19, 2013, the

answer was clear: "Mirowski strongly opposes the request." This response was hardly surprising

because the plaintiff has been urging the disqualification of Finnegan throughout the Indiana

case. It should have shocked no one that Mirowski continued to do so in this case.[3]

Next, "[i]n evaluating a disqualification motion, a court first must determine whether an

attorney-client relationship existed between the challenged law firm and the objecting client, and

then resolve whether the matter at issue in the challenged representation is the same or

substantially related to the matter involved in the prior representation." *Gross v. SES Americom,*

307 F. Supp. 2d at 723 (citing *Stratagene v. Invitrogen Corp.,* 225 F. Supp. 2d 608, 610 (D. Md.

2002)).

Under Maryland law,[4] the existence of an attorney-client relationship may be implied

from the conduct of the parties; it does not depend upon the execution of a written agreement or

even the payment of fees, unless the parties so specify. *See Crest Inv. Trust, Inc. v. Comstock,*

---

[3] *Baltimore County v. Barnhart,* 201 Md. App. 682 (Md. Ct. Spec. App. 2011), relied on by Boston
Scientific, is inapposite. The appellate holding was an affirmance of the circuit court's factual finding
that the moving party had waived the right to seek disqualification due to its own lack of diligence. *Id.* at
710-11.

[4] The law of the District of Columbia on this subject parallels that of Maryland. *Teltschik v. Williams &
Jensen, PLLC,* 683 F. Supp. 2d 33, 45 (D.D.C. 2010).

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.

23 Md. App. 280, 297 (Md. Ct. Spec. App. 1974), *cert. denied*, 274 Md. 726 (1975). The relationship may arise by conduct, a client's reasonable expectation of legal representation under the circumstances, and the attorney's failure to dispel that notion. *Att'y Grievance Comm'n of Md. v. Kreamer*, 404 Md. 282, 318-19 (2008); *Att'y Grievance Comm'n of Md. v. Brooke*, 374 Md. 155, 174-75 (2003).[5] In this case, a reasonable person in Mirowski's position would have believed, by virtue of Finnegan's actions in the prosecution patent #288 and the reissue of #119, that Finnegan represented both Guidant and Mirowski in establishing the validity of the patents and the meaning of the claims set forth in those patents. Insofar as the record before this court establishes, Finnegan did nothing to dispel that motion *See Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 210-12 (S.D.N.Y. 2009); *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 276-77 (S.D.N.Y. 2004). Their interests were, at the time of Finnegan's work before the PTO, identical, and the same work benefitted parties largely in the same manner.

To the contrary, this conclusion is reinforced by the deposition testimony of a Finnegan lawyer, on December 12, 2005, in the Delaware action against St. Jude. *Guidant Corp., et al. v. St. Jude Med., Inc.*, 409 F. Supp. 2d 543 (D. Del. 2006). This lawyer repeatedly conceded during her deposition that her firm, Finnegan, had represented both Guidant and Mirowski (including Dr. Mower) in connection with the prosecution of the #119 patent. (Stoll Dep., 24:1-11; 28:19-29:13; 63:9-15; 74:21-75:8, Dec. 12, 2005). This same lawyer was also instructed during her deposition, by another Finnegan lawyer who was defending the deposition, not to answer questions about what Dr. Mower told the deponent about the #119 patent. (Stoll Dep. 28:19-29:13). Finally, she testified at this same deposition that she had represented Dr. Mower in other patent matters. (Stoll Dep. 211:17-212:9).

---

[5] Maryland law in this regard is hardly novel. *DeVaux v. Am. Home Assurance Co.*, 444 N.E.2d 355, 357 (Mass. 1983) (setting out a nearly identical test).

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.

When Mirowski moved to disqualify Finnegan in the Indiana case, this same lawyer submitted a Declaration on January 30, 2012, which purported to "clarify" her 2005 deposition testimony. Having read all of this, her later "declaration" is a last ditch attempt to avoid Finnegan's disqualification; it is a classic turnabout and should be seen for what it really is. The fact that Guidant paid Finnegan's bills, in this court's view, is irrelevant. Such an arrangement happens every day in all manner of cases. *See Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. 1978).

In this court's view, there is no logical way for Boston Scientific, in defense of its St. Jude settlement in this case, not to attack a variety of aspects of both #288 and #119. No firm knows more about the strengths and weaknesses of these patents than Finnegan, and it strains credulity to believe that Finnegan received no confidential information from Mirowski in connection with its patent work or its work as lead counsel in *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*[6]

Boston Scientific conceded at the hearing before this court on August 29, 2013, that Finnegan represented Dr. Mower in a separate Delaware lawsuit involving patent #119, *Medtronic, Inc. v. Guidant Corp.*, 378 F. Supp. 2d at 504. This concession was sensible, given that Finnegan prepared Dr. Mower for a deposition regarding the validity of #119, defended this deposition, and prepared a privilege log asserting an attorney client privilege between it and Dr. Mower as a basis for withholding documents. In defending Dr. Mower and the #119 patent in the Delaware case with Medtronic, Finnegan unquestionably would have obtained intimate

---

[6] Although not necessarily dispositive, Mirowski was a named plaintiff in *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, No. IP 96-1718-CH/K, 2002 WL 1801525, at *1 (S.D. Ind. July 5, 2002). Finnegan is listed as counsel for the plaintiffs. On post-trial motions in that case, the trial court found that #288 was invalid, although this determination was later reversed on appeal. It is hard to believe that no confidential information was shared with Finnegan in that case regarding #288, as the jury had rejected St. Jude's argument that #288 was invalid. *Id.* at *2, *33.

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court

knowledge of the validity of #119 (or lack thereof), and learned Dr. Mower's views regarding the validity, scope, construction and any potential infringement of the same patent which is at issue in this case. There is no way they could have prepared the co-inventor of a patent for a deposition without doing so. *See Siskind*, 401 Md. at 57; *Buckley v. Airshield Corp.*, 908 F. Supp. at 306. All of this is relevant to the value of the #119 patent and, although the legal causes of action asserted in this case and the prior Delaware cases are not identical, the issues all centered, at least to some degree, on the value of the #119 patent. The Finnegan firm manifestly was exposed to client confidences within the meaning of Rule 1.9(a). *Buckley v. Airshield Corp.*, 908 F. Supp. at 306; *see also SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 141 F. Supp. 2d 616, 622-23 (W.D.N.C. 2001) (disqualifying counsel in a patent case).

The next issue is whether there is substantial similarity. Boston Scientific says it only wants Finnegan's assistance on "issues unrelated to patent invalidity and the cross-examination of Dr. Morton Mower." Boston Scientific's proposed application of Rule 1.9(a) in this case is overly cramped. When deciding a disqualification question, the court does not "weigh the circumstances with hair-splitting nicety." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (internal quotation marks and citations omitted). As Judge Posner cogently observed a quarter of a century ago, two representations are substantially related "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d at 1266, *quoted with approval in, HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 759 (S.D. W. Va. 2003). The answer in this case is an obvious yes.

The validity of #119 was directly at issue in the Delaware case in which Finnegan represented Dr. Mower, and #119 is a subject of Boston Scientific's defense in this case. As part

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.

value of #288 and #199. It is not appropriate for Finnegan to participate in this venture. *See Sun Studs, Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557, 1566-67 (Fed. Cir. 1985).

For the reasons stated above, it is this 3rd day of September, 2013, **ORDERED** that the defendants' motion to admit Finnegan as associate counsel (DE # 65) is denied.

Ronald B. Rubin, Judge

**ENTERED**

SEP 0 4 2013

Clerk of the Circuit Court
Montgomery County, Md.